**E-Filed 11/16/2010**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA, a Pennsylvania Corporation,<br><br>Plaintiff,<br><br>v.<br><br>RESOURCES DEVELOPMENT SERVICES, INC., et al.,<br><br>Defendants. | Case Number 5:10-cv-01324-JF/PVT<br><br>ORDER[1] GRANTING MOTIONS TO DISMISS<br><br>[re: docket nos. 15, 25, 28, 30, 33, 38, 41, 44, 50, 55, 59, 60, 61, 66, 74, 89] |

Plaintiff National Union brings this insurance subrogation action to recover funds paid to Waste Management Corporation as a result of an alleged fraudulent scheme. National Union asserts that several trucking companies, acting through their broker, Resource Development Services, Inc. (RDS), made illegal payments to Waste Management employees to allow their trucks to dump waste at a Waste Management landfill without proper processing. National Union has sued RDS, five RDS employees, twenty-six trucking companies, and eight Waste Management employees for fraud and related claims. Nine of the trucking company defendants,

---

[1] This disposition is not designated for publication in the official reports.

as well as RDS, RDS principal James Lucero, and RDS employee Martha Renteria, move to dismiss the complaint for failure to state a claim and failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b). Because the Court agrees that the complaint fails to plead fraud with sufficient particularity and fails to identify the role of each defendant in the alleged fraudulent scheme, the motion will be granted, with leave to amend.

## I. BACKGROUND

National Union brings this action as subrogee of Waste Management, which is the operator of several landfills including the Kirby Canyon Landfill (KCL).[2] Operating as a broker, RDS negotiated disposal rates at Waste Management landfills for the defendant trucking companies. RDS was responsible for making payments to Waste Management for loads disposed of by the trucking company defendants.

Proper procedures at KCL required that incoming trucks be processed at the scale house, where the trucks would be weighed, the waste material would be classified, and a computer-generated weight ticket would be issued to the driver. Each ticket would identify the total weight, classification of waste, and total cost of disposal. If the weight of the empty truck (the tare weight) was stored in the system, the weight ticket could be issued as the driver entered; if not, the truck would be weighed and weight ticket issued upon exit.

National Union claims that between December 2005 and May 2008, trucks from the defendant trucking companies disposed of waste at KCL without proper processing; the trucks either were not processed at all or the material to be disposed of was classified improperly in order to reduce the expense. The complaint alleges further that Waste Management employees permitted unprocessed and misclassified loads to enter KCL "in exchange for improper monetary payments made to them by RDS and its principals." FAC ¶ 64. Finally, National Union asserts that each of the trucking company defendants continued to dump material at KCL knowing that

---

[2] For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The relevant facts are drawn from National Union's complaint and related exhibits.

their loads were being processed inappropriately because drivers were not given weight tickets at all or were given weight tickets that misclassified the material in the trucks. FAC ¶ 66. National Union claims that "[b]y virtue of each trucking company defendant entering onto KCL and dumping waste material without a proper ticket, a conspiracy was formed between each trucking company defendant and each and all other defendants." FAC ¶ 67.

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted; dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). At the same time, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

While all pleadings must state a claim showing that the pleader is entitled to relief, *see* Fed. R. Civ. P. 8(a), a "party must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is to deter the filing of complaints "as a pretext for the discovery of unknown wrongs," to protect professionals from the harm that comes from being subject to fraud charges, and to "prohibit [] plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *In re Stat. Elec. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) (quoting *Semegen v. Weidner*, 780 F.2d 727, 713 (9th Cir. 1985). Accordingly, Rule 9(b) requires a plaintiff to be "specific enough

3

to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz*, 476 F.3d at 764 (internal quotation marks and citation omitted). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Swartz*, 476 F.3d at 765 (internal quotation marks and citation omitted). The plaintiff not only must set forth more than the neutral facts necessary to identify the transaction but also must explain why the statement or omission complained of was false or misleading. *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994). However, the defendant's scienter, or knowledge of falsity, may be alleged generally. *Id.*

### III. DISCUSSION

**A.   Trucking company defendants**

National Union asserts seven claims for relief against the twenty-six trucking company defendants: fraudulent concealment, conversion, constructive trust, trespass, invasion of private occupancy, negligent disposal of material, and aiding and abetting fraud. Nine of the trucking company defendants have moved to dismiss.[3]

**1.   Conspiracy**

National Union alleges that "[b]y virtue of each trucking company defendant entering onto KCL and dumping waste material without a proper ticket, a conspiracy was formed between each trucking company defendant and all other defendants." FAC ¶ 67. While conspiracy is not a separate claim for relief, the allegation of conspiracy is central to National Union's claim because if there was no conspiracy the trucking company defendants cannot be liable for the alleged wrongful acts of RDS or Waste Management's employees.

Conspiracy is "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or

---

[3] The trucking company defendants moving to dismiss are Valley Recycling, Randozzo Enterprises, Dominguez & Sons, Jonna Corp. dba Premier Recycling, Pacific Coast Recycling, Gibson Resource Group, Cal Waste, Bay Area Hauling Maintenance, JLV Equipment.

design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994) (citation omitted). "By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy." *Id*. at 511.  A claim for civil conspiracy requires actual commission of the underlying tort. *Id*.  Under California law, liability for civil conspiracy has three elements: (1) formation of the conspiracy (an agreement to commit a wrongful act); (2) operation of the conspiracy (commission of the wrongful acts); and (3) damage resulting from the operation of the conspiracy. *See People v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102 (Cal. App. Ct. 2003). Rule 9(b) imposes heightened pleading requirements where "the object of the conspiracy is fraudulent." *Swartz*, 476 F.3d at 765.

National Union contends that the trucking companies dumped waste at KCL without proper processing, and that the companies did so knowing of the alleged improper payments to Waste Management employees.  National Union claims that these allegations are sufficient to sustain a claim for conspiracy, given that under Rule 9(b) scienter may be averred generally. However, a plaintiff may not allege the formation of a conspiracy solely by appending a conclusory allegation of guilty knowledge to otherwise neutral actions. *See In re Glenfed*, 42 F.3d at 1548 (holding that pleading the "neutral fact" that a transaction occurred is insufficient to meet Rule 9(b)).  In *Impac Warehouse Lending Group v. Credit Suisse First Boston Corp*, 270 F. Appx. 570, 572 (9th Cir. 2008), the Ninth Circuit held that allegations that a bank bought loans on the secondary market together with a bare allegation that the bank knew that the loans were fraudulent, were insufficient both under Rule 8(a) and Rule 9(b).  The same is true in this case.

National Union argues that the complaint provides additional detail by alleging that the trucking companies knew the proper procedures at KCL and that drivers dumped materials at KCL "without a proper ticket."  It contends that these allegations support the conclusion that the trucking company defendants knew the processing was wrongful.  However, particularly when pled generally against twenty-six companies with varying activity at KCL, the allegations are speculative.  *See Bell Atlantic*, 550 U.S. at 555.  The complaint indicates that payments to Waste

5

1    Management were made through RDS, FAC ¶ 45, a fact that makes the significance of the
2    processing tickets unclear.  Nor has National Union provided a foundation for the companies'
3    respective knowledge of the proper processing procedures at KCL, particularly given that some
4    defendants apparently dumped only a handful of loads, or even a single load, at KCL during the
5    period at issue.  *See* FAC Apps. 23, 24, 25.  National Union must, at a minimum, "identify the
6    role of each defendant in the alleged fraudulent scheme."  *Swartz*, 476 F.3d  at 765

7         National Union also claims in its opposition papers that discovery will show that some of
8    the disposal occurred during non-business hours and that the trucking company defendants paid
9    RDS an amount that was unreasonably lower than would have been paid in the absence of fraud.
10   Dkt. 78 at 7 (Plaintiff's Opposition to Valley Recycling MTD).  Allegations raised for the first
11   time in the briefing are not considered in determining the sufficiency of the complaint.  *See*
12   *Fredrico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007) ("A court does not consider
13   after-the-fact allegations in determining the sufficiency of a complaint under Fed. R. Civ. P. 9(b)
14   and 12(b)(6).").  Moreover, while allegations of clandestine dumping or unreasonable payments
15   to RDS are of the type needed to support allegations of a conspiracy, the fact that National Union
16   must speculate about the possible existence of such facts is indicative of the conclusory nature of
17   the allegations of the complaint.  As noted above, one purpose of Rule 9(b) is to prevent the
18   filing of complaints "as a pretext for the discovery of unknown wrongs."  *In re Stat Elec. Sec.*
19   *Litig.*, 89 F.3d at 1405.

20        **2.      Fraudulent Concealment**

21        National Union alleges that each defendant intentionally concealed both the trucking
22   company defendants' improper dumping at KCL and the RDS defendants' illicit payments to
23   Waste Management employees and failure to pay Waste Management for the unprocessed or
24   misprocessed loads.  FAC ¶ 69-70.  The trucking company defendants contend that these
25   allegations do not meet the requirements of Rule 9(b) and that National Union also has failed to
26   allege each element of its claim.

27        Under California law, the elements of a common-law claim for fraudulent concealment
28   are: (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty

6

to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would have acted differently if she had known of the concealed or suppressed fact; and (5) the plaintiff sustained damage as a result of the concealment or suppression. *See Hahn v. Mirda*, 147 Cal. App. 4th 740, 748, 54 Cal. Rptr. 3d 527 (2007).

National Union's fraudulent concealment claim suffers from the same lack of particularity as its conspiracy allegations. In order to meet the Rule 9(b) pleading standard, National Union must allege the basis upon which concealment or suppression of material facts can be inferred. While the complaint alleges that trucking companies participated in the scheme, the complaint alleges no facts sufficient to infer that the trucking company defendants benefitted from the alleged improper relationship between RDS and the Waste Management employees. Indeed, the facts that are alleged are equally consistent with an inference that some or all of the trucking company defendants paid RDS the full amount for each load and that money was pocketed by RDS and Waste Management employees. *See Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.").

Finally, even assuming that the trucking company defendants knew that Waste Management employees were engaged in misconduct, National Union has not alleged the source of any duty on the part of the trucking company defendants to disclose such misconduct to Waste Management. *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (Cal. App. Ct. 1997) ("Where material facts are known to one party and not to the other, failure to disclose them is not actionable unless there is some relationship between parties which gives rise to a duty to disclose such known facts."). While it is conceivable that such a duty was created by contract between Waste Management and the trucking companies, Rule 9(b) requires that the source of the duty be pled with particularity.

**3. Conversion**

National Union alleges that defendants' wrongful actions were undertaken "with the specific intent to deprive Plaintiff of its funds and to improperly convert such funds to their own

7

use and benefit." FAC ¶ 97. It claims that conversion by the defendants resulted in damages in excess of $13,019,553.00. *Id.*

Under California law, a claim for conversion requires a plaintiff to allege (1) "ownership or right to possession of property"; (2) a defendant's wrongful act towards the property, causing interference with the plaintiff's possession; and (3) damage to the plaintiff. *PCO, Inc. v. Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 394 (2007). Conversion of money generally is not a permitted claim unless it involves the misappropriation of a definite sum held for the benefit of another. *Id.* at 396. National Union does not allege that the defendant trucking companies ever held a definite sum of money for the benefit of Waste Management. In its opposition papers, National Union indicates that defendants "charged [their] customers the amount for waste properly disclosed and then diverted some of the money to its own use." Dkt. 78 at 9. This allegation, which is not in the complaint, could support a claim that the defendants converted their customers' funds, but not that they converted Waste Management's funds.

**4.     Constructive Trust**

Defendant Valley Recycling argues, albeit in its reply brief, that under California law, constructive trust is a remedy, not a cause of action. *See Browning v. Yahoo!, Inc.*, No: C04-01463HRL, 2004 WL 249183 (N.D. Cal Nov. 4, 2004) ("As constructive trust is not a cause of action under California law, defendant's motion to dismiss . . . is granted with prejudice."). In response to a similar argument made by defendants RDS and James Lucero, National Union concedes that "from a hyper-technical perspective, [a claim] for Constructive Trust . . . [is] not in and of [itself], [a] "cause[] of action." Dkt. 124 at 9. While arguing that the allegations in the complaint are proper, National Union requests that it be permitted to amend the complaint to incorporate the remedy of constructive trust. *Id.* at 10. This request is appropriate and will be granted.

**5.     Trespass, Invasion of Privacy, and Negligent Disposal**

Defendants argue that because National Union's claims for trespass, invasion of privacy, and negligent disposal spring from the same "unified course of fraudulent conduct," they are

8

"grounded in fraud" and must be pled with specificity. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). The core allegations of all three claims are that the trucking company defendants knew that Waste Management employees were not authorized by Waste Management to give the defendants permission to dump material at the landfill. These allegations cannot be distinguished from the fraudulent course of conduct alleged above and must meet the pleading requirements of Rule 9(b).

To state a claim for trespass, a plaintiff must allege "wrongful entry" onto real property. National Union's allegation that defendants' entry into the landfill was wrongful is dependent upon defendants' knowledge that Waste Management employees were not authorized to give them permission for dumping. As discussed above, National Union has yet to make out a plausible claim that the trucking company defendants acted with knowledge that Waste Management employees were not authorized to allow their entry onto KCL.

In the alternative, National Union alleges that the trucking company defendants acted negligently in dumping on the Waste Management site without proper processing. National Union alleges that "[e]ach trucking company defendant owed a duty of care to Waste Management not to improperly dispose of material on Waste Management premises without proper authorization and proper disclosure to Waste Management." FAC ¶ 120. However, the complaint contains no allegation that any trucking company defendants disposed of material at KCL without authorization by Waste Management employees. Absent such an allegation, the trucking company defendants could breach their duty to Waste Management only if they knew that the Waste Management employees were not authorized to permit disposal. This simply restates the argument addressed above. National Union has failed to allege a sufficient factual basis for its claim that the trucking companies acted knowing that Waste Management employees were not authorized to grant them permission for dumping.

**B.    Martha Renteria**

National Union asserts three claims against Martha Renteria: fraudulent concealment,

conversion, and constructive trust.[4] National Union alleges that Renteria was "employed by RDS as an accountant." FAC ¶ 49. According to the complaint, "all the trucking company defendants . . . act[ing] in concert with . . . MARTHA RENTERIA . . . conspired to carry out the conduct alleged." FAC ¶ 67. There are no allegations regarding any specific actions by Renteria.

"In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Swartz*, 476 F.3d at 765 (internal quotation marks and citation omitted). National Union manifestly has failed to meet that standard here. It alleges that Renteria was an accountant for RDS and that RDS engaged in wrongdoing, but the closest it comes to alleging wrongdoing by Renteria is to make the conclusory claim that all defendants, including Renteria, knew that information was being concealed from Waste Management, FAC ¶ 67. This allegation is insufficient to meet even the general pleading standard of Rule 8(a), as it provides no "grounds" from which to infer the plausibility of Renteria's liability for National Union's injury. *Bell Atlantic*, 550 U.S. at 555.

National Union does identify additional facts in its opposition to Renteria's motion to dismiss. If supported, allegations that Renteria issued illicit payments to Waste Management employees would be strong evidence of her participation in a conspiracy. However, allegations raised for the first time in a party's briefing are not considered in determining the sufficiency of the complaint. *Fredrico*, 507 F.3d at 201.

**C.    RDS and James Lucero**

National Union asserts five claims against RDS and James Lucero: fraudulent concealment, deceit, conversion, constructive trust, and alter ego.[5] The claims against RDS and

---

[4]National Union's constructive trust claim is dismissed for the reasons articulated above.

[5]As noted above, National Union has conceded that neither constructive trust or alter ego are causes of action under California law and are therefore not claims upon which relief can be granted. As requested, National Union may clarify in its amended complaint that it seeks the remedy of constructive trust and that it alleges that RDS is the alter ego of James Lucero and

10

Lucero are at the center of National Union's case. The complaint alleges that Lucero, on behalf of RDS, made illegal payments to Waste Management employees in exchange for their improper processing of loads dumped at KCL by RDS's clients. Lucero and RDS argue that National Union has failed to plead its allegations of fraud with sufficient specificity or to state claims for fraudulent concealment or deceit as a matter of law.

As an initial matter, Lucero and RDS contend that the complaint fails to describe the particular role they played in the alleged conspiracy to defraud. However, the complaint alleges specifically that "Defendants RDS and James Lucero were making illicit payments to Waste Management employees . . . in exchange for allowing trucks of the trucking company defendants to enter KCL without proper processing." FAC ¶ 70. The specificity of this claim stands in sharp contrast to the complaint's lack of specificity with respect to Renteria or the individual trucking company defendants.

Lucero and RDS next argue that the complaint does not include "facts such as the times, dates, places, and benefits received and other details of the alleged fraudulent arrangement." Dkt. 89 at 3 (quoting *Neubronner v. Milken*, 6 F.3d 666, 972 (9th Cir. 1993). They also note that where allegations of fraud are made on information and belief, the complaint must at a minimum identify the source of the information and the basis of the belief. *Id.* (citing *Shroyer v. New Cingular Wireless Servs., Inc.*, 606 F.3d 658, 665 (9th Cir. 2010)). National Union disagrees with the characterization of the degree of specificity needed to "identif[y] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Dkt. 124 at 5 (quoting *Neubronner*, 6 F.3d at 672). While Lucero and RDS interpret Rule 9(b) to require that National Union state specifically to whom illegal payments were made, when payments were made, and the amount that was paid, National Union contends that it need allege only that RDS bribed Waste Management employees. Similarly, Lucero and RDS claim that National Union must allege the factual basis for its belief that facts stated "on information and belief" are true, while National Union asserts that it has carefully described the operation of the

---

Shelley Lucero.

conspiracy.

National Union is correct that it need not plead every detail of a fraudulent scheme in order to plead the circumstances under which the fraud occurred. *Cf. Walling v. Beverly Enterprisies*, 476 F.2d 393 (9th Cir. 1973) ("Rule 9(b) does not require or make legitimate the pleading of detailed evidentiary matter. . . . It only requires identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."). However, National Union's bare allegation that RDS and Lucero made illegal payments to Waste Management employees, with no indication of the basis for its belief in the truth of that allegation, is insufficient to permit RDS and Lucero to "defend against the charge and not just deny that they have done anything wrong," *Neubronner*, 6 F.3d at 672.

While National Union claims to have "carefully describe[d] the operation of the conspiracy," dkt. 124 at 6, it does not identify the factual basis for its belief that the conspiracy operated as described. In *Shroyer*, a case upon which National Union relies, the court determined that the plaintiff "explain[ed] exactly what it [was] that he believe[d] constituted the fraudulent statements," which allowed the defendants to prepare an answer articulating either that the statements were not made or why that they were not fraudulent. 606 F.3d at 665.

Because it is reasonably likely National Union could amend its complaint to include the factual basis for its belief that RDS and Lucero bribed Waste Management employees, the Court will address the substantive issues raised by RDS and Lucero to provide guidance with respect to such amendments. Like the trucking company defendants, Lucero and RDS argue that National Union has not alleged the "duty to disclose" element of fraudulent concealment. It is conceivable that, at least with respect to Lucero and RDS, such a duty might be grounded in the transactions between RDS and Waste Management described in paragraph forty-five of the complaint. *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (Cal. App. Ct. 1997) ("As a matter of common sense [relationships giving rise to a duty to disclose] can only come into being

Case No. 5:10-cv-03579-JF/PVT
ORDER GRANTING MOTIONS TO DISMISS
(JFLC3)

as a result of some sort of *transaction* between the parties").[6] However, at present the complaint does not indicate with any particularity a contractual or other basis for such a duty.

Similarly, with respect to National Union's claim for deceit, Lucero and RDS contend that the complaint does not allege a promise by Lucero or RDS as to which there was deception. National Union contends in its opposition papers that a promise may be inferred, noting that it is alleged in paragraph eighty-six that: "Plaintiff detrimentally relied on Defendants RDS, James Lucero, and Shelley Lucero's promise to pay all amount justly due for loads dumped at KCL by the trucking company defendants by permitting significant amount of waste loads to be disposed of at KCL." While it is true that a promise could be inferred from such language, Rule 9(b) requires that National Union must state clearly the promise on which the claim of deceit is based.

Finally, National Union's claim for conversion against RDS and Lucero suffers from the same infirmity as its conversion claim against the trucking company defendants. Conversion of funds is generally not actionable unless the plaintiff alleges that defendants held a specific amount for the benefit of the plaintiff. National Union does not allege tht RDS and Lucero held any specific amount for the benefit of Waste Management.

**D.    Premier Recycle's Motion to Strike Punitive Damages**

Defendant Jonna Corp, doing business as Premier Recycle Co., moves to strike National Union's claim for punitive damages. Premier Recycle contends that California law does not allow recovery of punitive damages by an assignee or subrogee. "Because a purely personal tort cause of action is not assignable in California, damages for emotional distress are not assignable. The same is true of a claim of punitive damage." *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 942 (1976) (citations omitted). Under California law, "nonassignable claims are not subject to subrogation absent express statutory authorization." *Fireman's Fund Ins. Co. V. McDonald,*

---

[6] Lucero and RDS also contend that they cannot be liable for failing to disclose their own alleged misconduct. They base this argument on the California Court of Appeal decision in *LiMandri v. Judkins*, 52 Cal. App. 4th at 338; however, they misconstrue the case. *LiMandri* holds that the duty to refrain from committing an intentional tort does not itself create a duty to disclose the intent to commit such an act. It does not imply that where an independent duty to disclose exists that duty is eliminated in regard to the defendant's own torts.

1  *Hecht & Solberg*, 30 Cal. App. 4th 1373, 1384 (1994).

2  National Union has filed a notice of non-opposition to the motion to strike. Accordingly, Paragraphs 74 and 99 and Item 2 of the Prayer for Relief will be stricken from the complaint.

## ORDER

Accordingly, IT IS HEREBY ORDERED that the motions to dismiss are GRANTED, with leave to amend. Any amended complaint must be filed within sixty days (60) days of the date of this order. Defendant Premier Recycle Co.'s motion to strike also is GRANTED.

IT IS SO ORDERED.

DATED: November 16, 2010

_____
JEREMY FOGEL
United States District Judge

14

Case No. 5:10-cv-03579-JF/PVT
ORDER GRANTING MOTIONS TO DISMISS
(JFLC3)