1

2                                                              **E-Filed 5/17/2011**

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11

| | |
|---|---|
| 12  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA, a Pennsylvania Corporation, | Case Number 5:10-cv-01324-JF/PVT |
| 13 | ORDER[1] DENYING MOTIONS TO DISMISS AS TO ALL MOVING DEFENDANTS OTHER THAN JLV AND GRANTING MOTION AS TO JLV |
| 14                      Plaintiff, | |
| 15         v. | |
| 16  RESOURCES DEVELOPMENT SERVICES, INC., et al., | [re: docket nos. 147, 149, 151, 152, 153, 154, 155, 156, 157, 158] |
| 17                      Defendants. | |
| 18 | |

19

20       Plaintiff National Union brings this insurance subrogation action to recover funds paid to

21  Waste Management Corporation as a result of an alleged fraudulent scheme.  National Union

22  asserts that several trucking companies, acting through their broker, Resource Development

23  Services, Inc. (RDS), made illegal payments to Waste Management employees to allow their

24  trucks to dump waste at a Waste Management landfill without proper processing.  National

25  Union has sued RDS, five RDS employees, twenty-six trucking companies, and eight Waste

26

27  ─────────────────

28       [1]       This disposition is not designated for publication in the official reports.

Management employees for fraud and related claims.  Defendant trucking company Valley Recycling moves to dismiss the complaint for failure to state a claim and failure to plead fraud and conspiracy with particularity as required by Federal Rule of Civil Procedure 9(b).  Seven other trucking company defendants move to join Valley Recycling's motion.[2]  Defendant Premier Recycling also moves to dismiss and to strike the complaint's prayer for punitive damages.

## I.  BACKGROUND

National Union brings this action as subrogee of Waste Management, which is the operator of several landfills including the Kirby Canyon Landfill (KCL).[3]  Operating as a broker, RDS negotiated disposal rates at Waste Management landfills for the defendant trucking companies.  RDS was responsible for making payments to Waste Management for loads disposed of by the trucking company defendants.

National Union claims that between December 2005 and May 2008 trucks operated by the defendant trucking companies disposed of waste at KCL without proper processing; the trucks either were not processed at all or the waste was classified improperly in order to reduce the charge.  The complaint alleges further that Waste Management employees permitted unprocessed and misclassified loads to enter KCL "in exchange for improper monetary payments . . . made to them by RDS and its principals," as well as by trucking company defendants including Pacific Coast Recycling and Gibson Resource Group.  SAC ¶ 64.

National Union asserts that each of the trucking company defendants was aware that it was Waste Management's practice and standard industry protocol for landfills to process loads

---

[2]  The trucking company defendants seeking joinder are A&S Metals, Randozzo Enterprises, Dominguez & Sons, Pacific Coast Recycling, Gibson Resource Group, Bay Area Hauling Maintenance, JLV Equipment.

[3]For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  The relevant facts are drawn from National Union's Second Amended Complaint and related exhibits.

2

1  by weight and classification of materials.  Each of the companies is alleged to have known that

2  its loads were not being processed properly either because it did not receive weight tickets

3  processed by Waste Management or because it received weight tickets misrepresenting the

4  materials dumped.  In addition, National Union alleges that the trucking company defendants

5  intentionally acted to avoid Waste Management processing protocols in the following ways: On

6  at least one occasion, on the orders of James Lucero, an RDS employee contacted "each and

7  every one of the trucking company defendants via telephone . . . and notif[ied] each of them to

8  be at KCL at 5:00 a.m., before the landfill opened, and their respective trucks would be allowed

9  to bypass the scale without proper processing and ticketing."  SAC ¶ 69.  At some time in or

10  around June 2007, each of the trucking company defendants was instructed by Lucero that no

11  dumping was to occur on Saturday, although KCL was normally open for dumping on that day.

12  Similarly, at some time during this period, the trucking company defendants were informed not

13  to bring loads to KCL on Tuesday afternoons because a particular KCL employee would be

14  present in the scale house performing audit functions.  On the other hand, in or around August

15  2007, each of the trucking company defendants was instructed that is was a "good week to

16  dump" at KCL.  SAC ¶ 71.

17       The complaint includes additional allegations with respect to particular trucking company

18  defendants: that a driver for Valley Recycling was advised by Valley Recycling's owner to be at

19  KCL by 5:00 am, and that he would be allowed to bypass the scales, SAC ¶ 76(a); that RDS and

20  Lucero instructed Randazzo Enterprises that its trucks could enter KCL without being processed

21  by simply stating "Moffit" or "Randazzo," SAC ¶ 76(b); that the owner of Gibson Resource

22  Group personally delivered an envelope of cash on behalf of Lucero to a Waste Management

23  employee participating in the scheme, SAC ¶ 77; and that Pacific Coast Recycling made

24  improper monetary payments directly to Waste Management employees, SAC ¶ 64.

25       National Union also alleges that the invoices provided by RDS to the trucking company

26  defendants distinguished between processed and unprocessed loads, that the trucking company

27  defendants described the unprocessed loads as "extra loads," and, that, contrary to industry

28

3

1  practice, the companies were charged a flat rate for all loads rather than a rate based on the

2  weight and material of each load. SAC ¶ 76. In addition, the rates charged for the loads

3  allegedly were unreasonably low. *Id.*

4  ## II. STANDARD OF REVIEW

5        Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed

6  against a defendant for failure to state a claim upon which relief may be granted; dismissal may

7  be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged

8  under a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104

9  (9th Cir. 2008). For purposes of a motion to dismiss, the plaintiff's allegations are taken as true,

10  and the court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v.*

11  *McKeithen*, 395 U.S. 411, 421 (1969). At the same time, "[w]hile a complaint attacked by a

12  Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

13  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

14  conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

15  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "[W]here the

16  well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

17  the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"

18  *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

19        While all pleadings must state a claim showing that the pleader is entitled to relief, *see*

20  Fed. R. Civ. P. 8(a), a "party must state with particularity the circumstances constituting fraud,"

21  Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is to deter the filing of complaints "as a pretext

22  for the discovery of unknown wrongs," to protect professionals from the harm that comes from

23  being subject to fraud charges, and to "prohibit [] plaintiffs from unilaterally imposing upon the

24  court, the parties and society enormous social and economic costs absent some factual basis." *In*

25  *re Stat. Elec. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) (quoting *Semegen v. Weidner*, 780

26  F.2d 727, 713 (9th Cir. 1985)). Accordingly, Rule 9(b) requires a plaintiff to be "specific

27  enough to give defendants notice of the particular misconduct which is alleged to constitute the

28

4

fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz*, 476 F.3d at 764 (internal quotation marks and citation omitted). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Swartz*, 476 F.3d at 765 (internal quotation marks and citation omitted). The plaintiff must set forth more than the neutral facts necessary to identify the transaction but also must explain why the statement or omission complained of was false or misleading. *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994). However, the defendant's scienter, or knowledge of falsity, may be alleged generally. *Id.*

## III. DISCUSSION

National Union asserts five claims for relief against the trucking company defendants: fraudulent concealment, trespass, invasion of private occupancy, negligent disposal of material, and aiding and abetting fraud. Nine of the trucking company defendants have moved to dismiss.

### 1.   Conspiracy

National Union alleges that "[b]y virtue of each trucking company defendant entering onto KCL and dumping waste material without a proper ticket, a conspiracy was formed between each trucking company defendant and all other defendants." FAC ¶ 67. While conspiracy is not a separate claim for relief, the allegation of conspiracy is necessary for the trucking company defendants to be held liable for the alleged wrongful acts of RDS or Waste Management's employees.

Civil conspiracy is "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994) (citation omitted). "By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy." *Id.* at 511. A claim for civil conspiracy requires actual commission of the underlying tort. *Id.* Under California law, liability for civil conspiracy has three elements: (1)

Case No. 5:10-cv-03579-JF/PVT
ORDER DENYING MOTION TO DISMISS AS TO ALL DEFENDANTS OTHER THAN JLV AND GRANTING
MOTION AS TO JLV
(JFLC3)

1    formation of the conspiracy (an agreement to commit a wrongful act); (2) operation of the

2    conspiracy (commission of the wrongful acts); and (3) damage resulting from the operation of

3    the conspiracy.  *See People v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102 (Cal. App. Ct. 2003).

4    Rule 9(b) imposes heightened pleading requirements where "the object of the conspiracy is

5    fraudulent."  *Swartz*, 476 F.3d at 765.

6         National Union's amended complaint adds a significant amount of factual detail with

7    respect to illicit payments made by James Lucero and other RDS employees, as well as some

8    trucking company defendants, to Waste Management employees in exchange for those

9    employees allowing the trucking company defendants to dump at KCL without processing or

10   with improper processing.  *See* SAC ¶ 77-80.  National Union alleges that it has incurred more

11   than $13 million in damages from the operation of the conspiracy.  *Id.* ¶ 109.  The remaining

12   issue is whether National Union has alleged sufficiently the formation of the conspiracy between

13   RDS and each of the trucking company defendants.

14        National Union contends that the trucking companies dumped waste at KCL without

15   proper processing, and that the companies did so knowing of the alleged improper payments to

16   Waste Management employees.  In its order dismissing National Union's earlier pleading, the

17   Court observed that in order to plead agreement to form a conspiracy, National Union must

18   allege more than the fact that trucking company defendants continued dumping at KCL and the

19   bare conclusion that they knew of fraudulent activity by RDS and Waste Management

20   employees.  In particular, the Court observed that "allegations of clandestine dumping or

21   unreasonable payments to RDS are of the type needed to support allegations of a conspiracy."

22   Order of Nov. 16, 2010 at 6.

23        The SAC does provide more factual support for National Union's claims.  National

24   Union now alleges that James Lucero and RDS instructed trucking company defendants to dump

25   loads at KCL outside of normal hours of operation and to avoid dumping at KCL on certain

26   days.  In addition, the complaint alleges that the trucking company defendants were charged

27   "unreasonably low" fees by RDS for their shipments and were charged a flat rate per load rather

28

6

1 than by the customary practice of basing price per load on the weight and type of material

2 dumped.

3     Defendants contend that these allegations still do not provide an adequate factual basis

4 for National Union's theory that the trucking companies knew that the processing procedures

5 were improper.  This case can usefully be compared with *Neubronner v. Milkin*, 6 F.3d 666 (9th

6 Cir. 1993), in which the Ninth Circuit expounded on Rule 9(b)'s particularized pleading

7 requirement in some detail.  In that case, the plaintiff's complaint, which alleged that the

8 defendant had engaged in insider trading, failed to meet the requirements of Rule 9(b).  The

9 court concluded that the complaint only alleged the "suspicious circumstances" that defendant

10 was an investment banker for plaintiff and that plaintiff eventually sank into financial trouble.

11 The court noted that plaintiff "does not allege specifically what information [defendant]

12 obtained, when and from whom he obtained it, and how he used it for his own advantage."  *Id.* at

13 671.

14     Here, National Union has alleged more than merely "suspicious circumstances."  It

15 alleges that Defendants were told to dump material outside of business hours, made unusual

16 financial arrangements, and received instructions from Lucero to avoid dumping when certain

17 Waste Management employees were present at KCL.  The allegations that the defendant trucking

18 companies received instructions to engage at dumping at KCL outside of ordinary operating

19 hours and were told not to dump at a certain time because a certain employee would be present

20 performing an audit are factual allegations which at this stage of the pleadings must be taken as

21 true.  The Court must also accept as true National Union's allegations that the billing procedures

22 and rates used for the trucking company defendants by RDS were inconsistent with industry

23 standards.  In addition, the allegations that the trucking company defendants were told to avoid

24 dumping on Saturdays during one period and told during another period that it was "a good week

25 to dump" provide additional, albeit circumstantial, support for National Union's conclusion that

26 the trucking company defendants each engaged in activity furthering the conspiracy.

27     Defendants nonetheless claim that National Union's allegations lack specificity and give

28

7

1   Defendants inadequate notice of the conduct with which they are charged.  It is true that the SAC

2   does not provide the date or dates of alleged dumping outside of business hours or the names of

3   the individuals to whom Lucero and his employees spoke at each company.  However, "the

4   general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b)

5   may be relaxed with respect to matters within the opposing party's knowledge." *Nuebronner*, 6

6   F.3d at 671.  While National Union's allegations lack precision, the Court concludes that they

7   give Defendants sufficient notice of the misconduct to enable Defendants to respond to the

8   complaint.  In their moving papers, Defendants identify several arguments that they could assert

9   as defenses, including contesting the irregularity of the billing arrangement with RDS,

10  explaining why the instructions given by Lucero did not raise suspicions, and articulating their

11  practices with respect to weight tickets.  While Rule 9(b) serves to protect defendants from suits

12  that are little more than fishing expedition for unknown wrongs, the bar is not set so high as to

13  require a plaintiff to prove its case in order to plead it.

14       In its motion for joinder, Defendant JLV Equipment contends that according to the

15  exhibits attached to the complaint, it dumped materials at KCL only on eight days in September

16  2006, several months before Lucero allegedly instructed the trucking companies to dump or not

17  to dump.  In light of the fact that there are no specific allegations that JLV continued to dump

18  after it was alleged to have knowledge of the fraudulent scheme, National Union cannot support

19  its allegation that JLV participated in the conspiracy.  While it is possible that the other alleged

20  wrongful acts occurred during the period in which JLV dumped at KCL, the instant complaint

21  does not allege such facts with sufficient specificity with respect to JLV.  Accordingly, the

22  motion to dismiss will be granted, without prejudice, as to JLV.

23       **2.    Fraudulent Concealment**

24       National Union alleges that each defendant intentionally concealed both the trucking

25  company defendants' improper dumping at KCL and the RDS defendants' illicit payments to

26  Waste Management employees and failure to pay Waste Management unprocessed or

27  misprocessed loads. SAC ¶ 76.  The trucking company defendants contend that in addition to not

28

8

1    meeting the requirements of Rule 9(b), National Union has not alleged the source of any duty on

2    the part of the trucking company defendants to disclose such misconduct to Waste Management.

3          Under California law, the elements of a common-law claim for fraudulent concealment

4    are: (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty

5    to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the

6    fact with intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would have

7    acted differently if she had known of the concealed or suppressed fact; and (5) the plaintiff

8    sustained damage as a result of the concealment or suppression. *See Hahn v. Mirda*, 147 Cal.

9    App. 4th 740, 748, 54 Cal. Rptr. 3d 527 (2007). "Where material facts are known to one party

10    and not to the other, failure to disclose them is not actionable unless there is some relationship

11    between parties which gives rise to a duty to disclose such known facts." *See LiMandri v.*

12    *Judkins*, 52 Cal. App. 4th 326, 337 (Cal. App. Ct. 1997). "Such a relationship can only come

13    into being as the result of some sort of transaction between parties," such as the relationship

14    between a seller and buyer, employer and prospective employee, doctor and patient, or parties

15    entering into a contractual agreement. *Id.*

16          National Union alleges that defendant trucking companies had a duty to disclose material

17    facts to Waste Management because the trucking companies and Waste Management were in a

18    transactional relationship. National Union points out that, while *LiMandri* does not define

19    "transaction," it does indicate that the scope is not limited to contractual relationships. The

20    parties dispute whether the trucking company defendants were third-party beneficiaries to a

21    contract between Waste Management and RDS. Irrespective of whether they were, National

22    Union has alleged sufficiently that the trucking companies had a transactional relationship with

23    Waste Management that give rise to a duty to disclose intentionally concealed or suppressed

24    facts. The trucking companies entered onto and dumped waste at KLC, knowing that Waste

25    Management permitted them to do so in the belief that all of the loads were processed properly

26    and paid for through RDS.

27

28

Case No. 5:10-cv-03579-JF/PVT
ORDER DENYING MOTION TO DISMISS AS TO ALL DEFENDANTS OTHER THAN JLV AND GRANTING
MOTION AS TO JLV
(JFLC3)

### 3.  Trespass, Invasion of Right of Private Occupancy, and Negligent Disposal of Material

Defendants' contentions that the SAC fails to state claims for trespass, invasion of the right of private occupancy, and negligent disposal of material are based on the same arguments that they assert with respect to National Union's claim for civil conspiracy.  As addressed above, the SAC alleges sufficiently that Defendants entered into a conspiracy to defraud Waste Management.  Accordingly, the pleading contains sufficient factual allegations to support claims that the trucking companies knew that their entry into KCL was wrongful.

Defendants also contend that the applicable statutes of limitations for trespass and injury to real property preclude any recovery for these claims based on activities that occurred more than three years before National Union filed its original complaint on March 29, 2010. However, each of these claims includes an allegation that Defendants concealed their activities in order to prevent Waste Management from discovering them and thus tolled the limitations period.

"When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled."  *Ra Med. Sys. v. PhotoMedix, Inc.*, 373 Fed. Appx. 784, 787 (9th Cir. 2010) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)).  Here, National Union's allegations are sufficient to permit it to claim that the applicable statutes were tolled.

### B.   Premier Recycle's Motion to Strike Prayer for Punitive Damages

Defendant Premier Recycle Co. moves to strike the prayer for punitive damages, arguing that California law does not allow recovery of punitive damages by an assignee or subrogee. "Because a purely personal tort cause of action is not assignable in California, damages for emotional distress are not assignable.  The same is true of a claim of punitive damage."  *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 942 (1976) (citations omitted).  Under California law, "nonassignable claims are not subject to subrogation absent express statutory authorization." *Fireman's Fund Ins. Co. v. McDonald, Hecht & Solberg*, 30 Cal. App. 4th 1373, 1384 (1994).

10

1    As it did with its original complaint, National Union acknowledges that the inclusion of a prayer
2    for punitive damages is in error.  Accordingly, Paragraphs 74 and 99 and Item 2 of the Prayer for
3    Relief will be stricken from the complaint.

4                                           **ORDER**

5           Accordingly, the motion to dismiss is granted with respect to JLV Equipment, with leave
6    to amend.  The motion to strike the prayer for punitive damages is also granted.  Any amended
7    complaint must be filed within thirty days (30) days of the date this order is filed.  The motions
8    to dismiss otherwise are denied.  Defendants shall file their answers within thirty (30) days of the
9    date this order is filed.

10   IT IS SO ORDERED.

11   DATED: May 17, 2011

     _____
     JEREMY FOGEL
     United States District Judge

Case No. 5:10-cv-03579-JF/PVT
ORDER DENYING MOTION TO DISMISS AS TO ALL DEFENDANTS OTHER THAN JLV AND GRANTING
MOTION AS TO JLV
(JFLC3)